## MUTUAL TEL. CO. v. UNITED STATES.
### No. 13284.

United States Court of Appeals
Ninth Circuit.

April 27, 1953.

Rehearing Denied July 20, 1953.

Heaton L. Wrenn and Marshall M. Goodsill, Jr., Honolulu, Hawaii, for appellant, Mutual Tel. Co.

A. William Barlow, U. S. Atty. Honolulu, Hawaii, Ellis N. Slack, Acting Asst. Atty. Gen., Howard Locke, Robert N. Anderson and S. Dee Hanson, Sp. Assts. to Atty. Gen., for appellee.

Before ORR, Circuit Judge, and LING and BYRNE, District Judges.

ORR, Circuit Judge.

Appellant is an Hawaiian public utility corporation engaged in furnishing wire telephone service in the Hawaiian Islands. It is subject to the jurisdiction of the Public Utilities Commission of the Territory of Hawaii, hereinafter called Commission.

In 1941 appellant experienced an unusually heavy demand for new telephone service in Honolulu which became a burdensome load on its central office facilities and distribution plant. This difficulty was contributed to by existing restrictions on obtaining materials and supplies. In order to alleviate the situation a plan was worked out which, it was thought, would discourage the demand for new installations. In September, 1941, appellant petitioned the Commission for permission to increase its existing "installation" and to establish a new "supersedure" charge. The requested increases were approved by the Commission and the increased collection authorized but definite limitations as to use and custody of the receipts were imposed. Pertinent provisions of Commission's order are set out in the margin.[1]

1. "The company makes no showing that such an increase of revenue is required, and we believe it improper to allow the increase to go through in a manner that would permit the increase to be passed on to the common stockholders in the form of increased dividends.

" * * * *

"The increase over present charges would be credited to Account No. 175, Contributions to Telephone Plant, and in computing rates on an 'investment basis' would be a reduction from the net investment in arriving at a rate base. In-

vestors would not require a return and subscribers would be spared paying a capital charge on same. On motion of the Commission or upon application of the Company, other disposition of the accrued balance might be made as conditions warranted.

" * * * *

"The Commission in approving the increase and establishment of said charges, does not intend that such approval is to be construed as a finding of reasonableness of such charges or practices and is of the opinion that said charges should

On October 2, 1941, the increased installation and new supersedure charges went into effect and continued until May 1, 1942, when they were terminated by an order of the Commission. Appellant requested the Commission's permission to recapture the amount of the increased rates as income. This request was denied because, as the Commission stated, this did not appear "to be the proper method by which this amount should be accounted for after giving consideration to the purposes for which these monies were obtained from subscribers." The receipts from the increased charges had been placed by appellant in an account designated as "175.2." The Commission decided that the accrued balance in this account should, until its further order, be considered as "Contribution to Telephone Plant" and remain in subaccount 175.2 and not be taken into the income account until the Commission authorized such action. This order was complied with by appellant and the amounts collected because of the increased rates were ascertainable at all times. Moneys collected from increased rates were intermingled with other moneys in the general treasury of appellant but appellant kept on hand at all times sufficient cash or marketable securities so that it could immediately comply with any order the Commission might make as to the disposition of the fund.

Appellant did not report amounts received from the increased charges in 1941 and 1942 as part of its gross income in its tax returns for those years. The Commissioner of Internal Revenue determined a deficiency of $36,728.39. This amount was paid by appellant. Claims for refund were made and disallowed and this action resulted.

The trial court held the receipts from the increased rates to be taxable income in 1941 and 1942. We disagree. We are persuaded that the increased rates were not received by appellant "under a claim of right and *without restriction as to its disposition.*" See North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197. (Emphasis added.) The Commission possessed and exercised authority to direct retention of the moneys received from the increased rates. Certainly it cannot be said that the receipts came into the possession of appellant subject to its "unfettered command" and that it was free to enjoy the receipts at its option. See Corliss v. Bowers, 1930, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 604. The command exercised in this case emanated from the Commission which imposed upon the appellant the duty to hold in reserve an amount equal to the collections made at all times. The most that can be said is that appellant may have received the moneys under a claim of right but the remaining element necessary to constitute the collections in 1941–1942 taxable income, viz., "without restrictions," is absent here. The Government argues that a correct application of the principle laid down in the long line of cases dealing with the claim of right doctrine compels an affirmance of the judgment in this case. We conclude that the proper interpretation of the Supreme Court's decisions as applied to the facts of this case compel a contrary result. We think the Government has failed to correctly appraise the second requirement with which the cases deal. The controlled circumstances under which the moneys were received and the imposed restriction as to disposition are the dominant factors here. The Commission's order requires more than a mere bookkeeping detail. It in effect directs appellant to retain custody of the moneys or its equivalent until further disposition is directed. An order directing such disposition was entered by the Com-

be but temporary, and that withdrawal of such approval should be made at such time as the Commission deemed appropriate.
" * * *

"The amounts representing the increase in connection charges and charges for supersedure of service over and above those which are now being charged by petitioner in the same respective categories and the newly established charges for supersedure of service where no charge has been previously made, shall be charged to Account No. 175, Contributions to Telephone Plant, the amounts so accruing to be segregated from other charges to said account."

mission on February 24, 1949, and on March 1, 1949, appellant deposited, as directed, the moneys to the "Retirement System of Mutual Telephone Company" in Bank of Hawaii. Then, and not until then, did the moneys become taxable to it.

Appellant argued in its brief, but all but abandoned during oral argument, a contention that the increased "installation" and new "supersedure" charges did not become taxable income at any time. In any event we think the contention has no merit.

Reversed.